## FRANCOIS *vs.* THE STATE.

1. An indictment under the eighth section of the fourth chapter of the Penal Code, (Clay's Digest 435, § 8,) which charges the defendant with selling "*to a certain slave, whose name is to the jurors unknown*," is fatally defective, on demurrer, for uncertainty.

2. As a general rule, when an indictment is defective on demurrer, advantage may also be taken of the defect on motion in arrest of judgment.

ERROR to the City Court of Mobile.

Tried before the Hon. Alex. McKinstry.

PERCY WALKER and REQUIER, for plaintiff in error.

The indictment is clearly defective in not averring the name of the slave, or in some other manner, *designating the person*, so that the *particular slave* traded with could be identified. Without this, the defendant could not be apprised of the particular charge he was called on to answer.

The necessity of this degree of certainty is laid down in all the text books, and in various adjudged cases. See Archbold Cr. Pl. 42–37; 2 Term Rep. 581; 2 Str. 1127; Show. 289; 1 Chitty 168, 172, 211, 215, 227, 229; 1 R. & R. 489.

The act of 1850, page 51 of pamphlet acts, does not do away with the necessity of the pleader adhering to the above general rule.

True, that act declares it to be unnecessary, in such cases as this, to aver or prove the name of the owner, &c., of the slave; but it does not follow that the pleader need not, by proper averments, indicate the slave trafficked with, for this is essential to the protection of the defendant.

M. A. BALDWIN, Attorney General, for the State.

1. The name of the owner need not be averred. See acts 1850, page 49.

2. The manner of alleging a want of consent of the owner of the slave, is good under the act of 1850. The State v. Lindsay, 19 Ala. 560.

3. There are some cases in which the name of third persons cannot be ascertained, and in which it is sufficient to state "a certain person to the jurors aforesaid unknown." 1 Chitty Cr. Law 212; 2 Hawk. ch. 25, § 71.

4. If the name of the slave, to whom property was sold, is unkown, it is sufficient so to aver it in the indictment. Noonan v. The State, 1 S. & M. 574; Com. v. House, 8 Leigh. 755; The State v. Nutwell, 1 Gill. 54.

GOLDTHWAITE, J.—The section of the penal law under which the defendant was indicted is in these words: "Every person who shall buy, sell, or receive from any slave any commodity, of any kind or description, without the leave or consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold or bartered, first obtained, shall, on conviction," &c. Clay's Dig. The indictment charges the defendant with selling "*to a slave whose name is to the jurors unknown*, one gill of whisky, without the leave or consent," &c.; and the main question raised in this court is, as to the sufficiency of this indictment. The rule is well settled, not only that the facts and circumstances which make up the offence must be stated in the indictment, but that they must be stated with such certainty and precision, that the defendant may be enabled to judge whether they constitute an indictable offence or not, that he may demur or plead to the indictment accordingly; in order that he may prepare his defence, may plead a former conviction or acquittal, and that there may be no doubt as to the judgment to be given. Arch. Crim. Pl. 40. The question, then, is, are the facts which constitute the offence stated in this indictment with such a degree of certainty, as to enable the defendant to prepare his defence?

Assuming that the indictment is good, we apprehend it would be competent for the prosecution to identify the slave by proving his name, the name of his owner, or in any

other mode; and if this was done, the defendant would then be obliged to apply his defence to the specific case made out by the prosecution; he would be compelled to prove that he had the consent of the master, owner, or overseer, to trade with the particular slave with whom the evidence had connected the act charged; and to do this, he must necessarily be prepared at the trial to defend every case which can be embraced in the general act alleged in the indictment. It was to avoid this difficulty, that the rule which we have referred to was adopted, the effect of which was, to require the pleader so to frame the indictment as to present the particular case. The cases cited by the counsel for the plantiff in error are conclusive, in showing the application of this rule to cases similar to the one under consideration.

We would not, however, be understood as deciding that it was absolutely necessary to describe the slave, in indictments for this species of offence, by his name. ' That is but one mode of description, and any other which would afford to the defendant information, as to the particular slave to which the charge referred, we are inclined to think would be sufficient; neither do we deny that in some cases, where the means with which, or the person on, or by whom, an offence is committed, are unknown to the jurors, it may not be so charged in the indictment. If the trading with a slave was an offence, without any other constituent, we see no reason why the indictment might not allege his name as unknown to the jurors, if such was the fact, without in the slightest degree impairing the ability of the accused to defend; and we can suppose many cases, in which this can be done without infringing on the rule which we have referred to, and on which our decision is based. When, however, this rule would be invaded, and the effect of alleging a constituent of the offence in this form would be to create such a degree of uncertainty in the indictment, as materially to abridge the ability of the defendant to prepare his defence, we hold that it could not be so charged.

It is urged, however, on the part of the State, that indictments for trading with slaves are exempted from the influence of this rule, by the operation of the act of 7th February, 1850. That act declares, that on the trial of any person in-

dicted for trading with a slave, it shall not be necessary, in order to convict, for the State to aver, or prove, who was the master, owner, or overseer of such slave, or that the leave and consent was not given, &c. (Acts, 1849–50, p. 51); and our opinion is, that the object of the Legislature, by this enactment, was merely to dispense with an averment, which was frequently difficult to prove, and to cast the *onus* of making this proof, when essential to the defence, upon the defendant, instead of requiring it to be established by the State, as it must have been under the rules of pleading, if alleged in the indictment; for it then would have become matter of description. The intent of the law maker was, not to deprive the accused of the power of defence, by rendering unnecessary every averment which could inform him of the subject matter to which the evidence against him was intended to apply, but simply to dispense with a particular allegation, which, by its difficulty of proof, too often led to the escape of the offender.

These views sufficiently indicate our opinion, that the indictment is defective; and as the objection would have been fatal on *demurrer*, under the general rule it must prevail on a motion in arrest of judgment. The other questions raised on the record it is unnecessary to decide, as no conviction can be had on the present indictment. The judgment must be reversed, and the indictment quashed; but the sheriff of Mobile county must retain the defendant in custody, until he give sufficient bail, in the sum of two hundred dollars, for his appearance at the next term of the City Court of Mobile, to answer a new indictment for the offence.